UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SERVANT VENTURES, INC.,

    Plaintiff,

v.

GAZELLES, INC.; and GAZELLES FL, INC.,

    Defendants.

CASE NO. C18-5327 BHS

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants Gazelles FL, Inc., and Gazelles, Inc.'s ("Gazelles") motion to dismiss for lack of jurisdiction (Dkt. 22). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On April 6, 2018, Plaintiff Servant Ventures, Inc. ("SVI"), doing business as Gazelles International Coaches, filed a complaint against Gazelles in Clark County Superior Court for the State of Washington. Dkt. 1-1. SVI asserts causes of action for

breach of contract, promissory estoppel, tortious interference with contract, and defamation. *Id*.

On April 25, 2018, Gazelles removed the matter to this court. Dkt. 1.

On May 3, 2018, the Court granted in part and denied in part SVI's motion for temporary restraining order. Dkt. 23.

On May 2, 2018, Gazelles moved to dismiss for lack of jurisdiction. Dkt. 22. On May 21, 2018, SVI responded. Dkt. 31. On May 25, 2018, Gazelles replied. Dkt. 35.

## II. FACTUAL BACKGROUND

Verne Harnish, the founder and CEO of Gazelles, is the author, creator, and owner of certain books, programs, and curriculums specializing in leadership, strategic planning, and growth for individuals and companies looking to succeed and scale up in the business world. Dkt. 1-4, ¶¶ 1, 4. Individuals pay a fee to be trained and certified in Mr. Harnish's methods and intellectual property with the goal of becoming a coach. *Id*. ¶ 4. Once an individual becomes a coach, he or she pays a membership fee for the opportunity to utilize and train others in Mr. Harnish's methods and intellectual property. *Id*. In 2001, Mr. Harnish created Gazelles International as a "division" of the Gazelles brand to focus on offering education and training to business coaches around the world. Dkt. 12-1, ¶ 2; *id*., Ex. A at 3.

In approximately 2007, Mr. Harnish brought on Keith Cupp to operate the Gazelles International division. Dkt. 1-4, ¶ 5. Mr. Cupp asserts that he "took over the Gazelles International Coaches business from Mr. Ron Huntington." Dkt. 32, ¶ 3. Mr. Huntington lived and worked in the Seattle, Washington area at that time and is currently

an international coach residing in Seattle. *Id.*, ¶ 4. Mr. Cupp resides in Vancouver, Washington, and has maintained his offices continuously in Vancouver, where the Gazelles International business records are maintained. *Id.* ¶ 9. Mr. Harnish declares that "Mr. Cupp's specific role in the Gazelles International division was to educate, train, and certify coaches based on the ideas and intellectual property created by Mr. Harnish." Dkt. 1-4, ¶ 5.

In 2010, Mr. Cupp formed SVI in Washington. Dkt. 1-1, ¶ 6. Prior to that, Mr. Cupp alleges that he operated SVI as a sole proprietorship. *Id.* ¶ 7. Mr. Harnish declares that he was unaware that Mr. Cupp formed SVI or operated Gazelles International as SVI doing business as Gazelles International. Dkt. 1-4, ¶ 6; Dkt. 12-1, ¶ 4.

Regarding SVI's contracts with its coaches, Mr. Cupp enters into the contracts on behalf of SVI. Dkt. 17-1 at 1. Based on the face of the contract, and a review of the record before the Court, there is no evidence that Gazelles is a party to any SVI coach's contract. Mr. Cupp declares that seven Gazelles International coaches reside in Washington, and two other coaches reside in Portland, Oregon, marketing to and supporting Washington clients. Dkt. 32, ¶ 5. Mr. Harnish declares that Gazelles International contracts with approximately 250 coaches worldwide. Dkt. 1-4, ¶ 7.

Regarding Gazelles' other contacts with Washington, Mr. Cupp declares that Gazelles has been involved in numerous events in Washington. Mr. Cupp cites eight "Scaling Up Workshops" held in Seattle and Portland, which advertised to and attracted individuals from Washington. Dkt. 32, ¶ 12. Mr. Cupp declares that these workshops involved extensive coordination and planning between Gazelles International and

Gazelles. *Id*. ¶¶ 9–12. Gazelles received some of the profits from these workshops. *Id*. ¶ 15. Mr. Cupp also declares that he is in constant and regular communication with Gazelles' employees. *Id*. ¶¶ 10–11.

Mr. Harnish declares that he has travelled to Washington "a handful of times to deliver speeches for a non-profit called Entrepreneurs Organization." Dkt. 22-1, ¶ 2. Otherwise, he is unable to "recall conducting any meaningful business while in the State of Washington." *Id*.

Finally, it is undisputed that Gazelles operates a website that advertises to individuals in Washington.

### III.  DISCUSSION

**A.  Standard**

Claims against a defendant may be dismissed when a court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant seeks dismissal on these grounds, the plaintiff must prove jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). To determine whether it has jurisdiction over a defendant, a federal court applies the law of the state in which it sits, as long as that law is consistent with federal due process. *Diamler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Washington grants courts the maximum jurisdictional reach permitted by due process. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004). Thus, the only question remaining for a Washington district court is whether the Court's exercise of jurisdiction comports with the limitations imposed by due process. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984). A court may not exercise jurisdiction

over a defendant if that exercise of jurisdiction "offend[s] traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Fair play and substantial justice mandate that a defendant has minimum contacts with the forum state before it may be hailed into a court in that forum. *Id*. The extent of those contacts can result in either general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If the requirements for either are met, a court has jurisdiction over the parties. *Helicopteros*, 466 U.S. at 413–14.

**B.     General Jurisdiction**

General jurisdiction permits a court to consider claims against a person or a corporation for any conduct, even that which occurred outside the forum state. *Goodyear*, 564 U.S. at 924; *Daimler*, 134 S. Ct. at 754. A corporation's mere presence within a state is not sufficient to establish general jurisdiction. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017). Rather, the corporation's contacts with the state must be "so continuous and systematic as to render [it] essentially at home." *Goodyear*, 564 U.S. at 919. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id*. "Th[at] inquiry 'calls for an appraisal of a corporation's activities in their entirety.'" *BNSF*, 137 S. Ct. at 1559 (quoting *Daimler*, 134 S. Ct. at 761).

A corporation is undeniably "at home" in both the state where it is incorporated and the state where it is headquartered. *Daimler*, 134 S. Ct. at 760. A corporation may also be considered "at home" outside those states, but only in "exceptional case[s]."

*BNSF*, 137 S. Ct. at 1558. "[T]he general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Daimler*, 134 S. Ct. at 762 n.20. "Rather, the inquiry 'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *BNSF*, 137 S. Ct. at 1558 (quoting *Daimler*, 134 S. Ct. at 762). "Under [the majority's] reasoning, it is virtually inconceivable that such corporations will ever be subject to general jurisdiction in any location other than their principal places of business or of incorporation." *Id*. at 1560 (Sotomayor, J., dissenting)

In this case, SVI argues that the Court has general jurisdiction over Gazelles. Dkt. 31 at 2–14. Gazelles was incorporated in Virginia and then Florida and had a principal place of business in Virginia and now Florida. Dkt. 1-4, ¶ 2. Thus, because Gazelles was not incorporated in Washington and is not headquartered in Washington, SVI must show that Gazelles' contacts with Washington are "so continuous and systematic as to render [it] essentially at home." *Goodyear*, 564 U.S. at 919. First, SVI argues that Gazelles International, located in Washington, is a division of Gazelles. SVI contends that this assertion alone "ends the analysis." Dkt. 31 at 12. SVI is wrong because mere presence in a state does not confer general jurisdiction over a national corporation. "The standard for general jurisdiction is high; contacts with a state must 'approximate physical presence.'" *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)). "Put another way, a defendant must not only step through the door, it must also '[sit] down and [make] itself at home.'" *Id*. (quoting *Glencore Grain Rotterdam B.V. v.*

*Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002)). More importantly, under recent Supreme Court precedent, the mere presence of a division of a company in a state does not approximate physical presence within that state. *See*, *e.g.*, *BNSF*, 137 S. Ct. at 1559 (no general jurisdiction in Montana despite "2,000 miles of railroad track and more than 2,000 employees in Montana."). Under these standards, SVI has failed to establish that Gazelles' division in Washington amounts to the physical presence of Gazelles in Washington.

Second, SVI argues that Gazelles has established "'continuous and systematic contacts' approximating physical presence . . . ." Dkt. 31 at 13. The Court disagrees because SVI has failed to show that this is an "exceptional case" such that Washington may be considered Gazelles' "home." *BNSF*, 137 S. Ct. at 1558–59. In fact, because SVI operates as a separate corporate entity apart from Gazelles, the SVI and/or Gazelles International's contacts and contracts within the state may not be attributed to Gazelles. In other words, it is unclear whether Gazelles operates in Washington at all. While Gazelles may have intended to operate within Washington, the allegations in the complaint and accompanying contracts establish that SVI was operating in Washington as a separate corporate entity, and SVI's operations are not necessarily Gazelles' operations. Thus, SVI has failed to establish that its actions within Washington may form the basis for the exercise of general jurisdiction over Gazelles, and the Court must evaluate Gazelles' other contacts with the forum.

Based on the record, the relationship between Gazelles and Mr. Cupp is more akin to a licensee-licensor relationship, which does not establish general jurisdiction within the

forum. *See*, *e.g.*, *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (licensor's "receipt of royalty income from its licensees for sales made in [forum state] is equally irrelevant."). Similarly, Mr. Harnish's sporadic appearances in Washington, even if he was here on behalf of Gazelles, combined with the few Scaling Up Workshops held in the area do not amount to contacts so "continuous and systematic" to make Washington Gazelles' home. Therefore, the Court grants Gazelles' motion on the issue of general jurisdiction.

C. **Specific Jurisdiction**

Specific jurisdiction permits a district court to exercise jurisdiction over a nonresident defendant for conduct that "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). To prove that specific jurisdiction exists in a tort-based action, a plaintiff must demonstrate that: (1) a defendant purposefully directed its activities at the forum state, (2) the lawsuit arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Picot*, 780 F.3d at 1211. A defendant purposefully directs its conduct toward a forum state when its actions are intended to have an effect within the state. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2003). This occurs if the defendant: "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Financial Co.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

In this case, SVI argues that the Court has specific jurisdiction over Gazelles. Dkt. 31 at 16–22. The main problem with SVI's argument is that SVI has failed to establish

that Gazelles expressly aimed an intentional act at Washington. For example, SVI asserts that Gazelles "entered into long-term, open-ended contractual relationships with [SVI] in Washington, as well as with Mr. Huntington before [SVI]." Dkt. 31 at 16. While it may be true that Gazelles entered into contracts with Mr. Huntington, SVI has failed to show that Gazelles knowingly entered into any contract with SVI. Gazelles raised this specific issue in its motion. Dkt. 22 at 8 ("there is no contract between [Gazelles] and [SVI.]"). SVI failed to address it in response. Instead, the record shows and the complaint alleges that Gazelles entered into a contract with Mr. Cupp. Dkt. 1-1, ¶ 34 ("Gazelles Inc. entered into the Gazelles Contract with [SVI's] predecessor in interest, the sole proprietorship of Keith Cupp dba Gazelles International Coaches"). This assertion is supported by the fact that Gazelles' cease and desist letters are addressed to Mr. Cupp, and not to Mr. Cupp on behalf of SVI. Dkt. 30-1 at 2, 6. Although SVI alleges that SVI assumed the contract, *id.* ¶ 35, Gazelles has provided authority for the proposition that both an oral contract for professional services and a license contract may not be conveyed without the other party's consent. Dkt. 35 at 11. Moreover, SVI fails to allege or submit evidence to establish that Gazelles either ratified or acquiesced to SVI's alleged assumption of the contract with Mr. Cupp. Thus, SVI has failed to show that its breach of contract claims "arise[s] out of the [Gazelles'] forum-related activities." *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 302 (9th Cir. 1986).

SVI's strongest argument is that Gazelles is attempting to interfere with SVI's business contracts. This argument, however, fails the effects test because the intentional act must be "expressly aimed at the forum state." *Morrill*, 873 F.3d at 1142. "An

intentional act is one 'denot[ing] an external manifestation of the actor's will . . . not includ[ing] any of its results, even the most direct, immediate, and intended.'" *Id*. at (*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674–74 (9th Cir. 2012)). The majority of SVI's allegations supporting this claim revolve around contracts with vendors in New Orleans for an annual summit. Dkt. 1-1, ¶¶ 54, 55, 58. These alleged actions are not directed at the forum state and will be ignored for purposes of specific jurisdiction.

SVI also alleges that Gazelles has attempted to interfere with SVI's coaches' contracts. *Id*. ¶ 57. SVI, however, fails to show that Gazelles expressly aimed its alleged interference at SVI's Washington-based coaches. The record shows that SVI has approximately 250 coaches under contract, with only ten located in Washington or nearby. SVI has submitted the emails that support its claims, and they are mass emails directed to groups of people without any specific indication that the email is expressly aimed at Washington. *See* Dkts. 27-1—27-4. In fact, three of the four emails have a link at the bottom stating "Click here to unsubscribe," which indicates that the recipient has subscribed to a mass emailing list. *Id*. Based on these emails, SVI has failed to show that Gazelles targeted Washington-based coaches. "[M]ere injury to a forum resident is not a sufficient connection to the forum[; rather,] an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 134 S. Ct. at 1125. "As was the case in *Walden* and *Picot*, [the counterclaimant's] injuries are entirely personal to her and would have been the same regardless of where she lived or did business." *Job's Daughters Int'l v. Yoast*, C16-1573RSL, 2018 WL 307133, at *2 (W.D. Wash. Jan. 5, 2018) (granting motion to

dismiss counterclaim for lack of personal jurisdiction). Thus, these emails to general lists do not specifically target Washington or its residents.

SVI's next assertion is that the emails in combination with Gazelles' events in the local area form sufficient contacts to confer jurisdiction. Dkt. 31 at 17. The main problem with the event contacts is that Mr. Cupp declares that "[e]ach of the Scaling Up Workshops involved extensive marketing and advertising targeting Washington businesses to promote attendance and promoting *Gazelles International Coaches* based in Washington and the Pacific Northwest." Dkt. 32, ¶ 12 (emphasis added). Mr. Cupp also declares that:

> The Scaling Up Workshops were planned and supported by SVI on behalf of the Gazelles International Coaches in that area. The Coaches actually conducted the Workshops and collected the fees from attendees, a portion of which were paid to Gazelles, Inc.

*Id*. ¶ 15. If SVI planned and supported these events that were conducted by SVI's coaches, then SVI has failed to establish that these contacts were intentional acts by Gazelles expressly aimed at Washington residents. Instead, these were acts on behalf of SVI, a Washington corporation, with royalties paid for the use of Gazelles' intellectual property. Based on these facts, SVI has failed to establish that these events constitute contacts by Gazelles in the forum state.

Finally, SVI argues that Gazelles aimed the alleged defamation at Washington. However, similar to the tortious interference claim, SVI has failed to show that Gazelles directed its activities toward Washington, as opposed to SVI's worldwide coaches in general. "For a State to exercise [specific] jurisdiction consistent with due process, the

defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121. Alleged defamation to 250 people, ten of which reside in the forum, does not create a substantial connection to the Washington forum. Moreover, it seems that Gazelles committed the alleged defamation in connection with a conference in New Orleans, and SVI has failed to allege or establish that any of the ten Washington coaches observed the alleged defamation. Therefore, SVI has failed to establish specific jurisdiction over Gazelles for this claim as well.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Gazelles' motion to dismiss for lack of jurisdiction (Dkt. 22) is **GRANTED**. The temporary restraining order (Dkt. 23) is dissolved for lack of jurisdiction.

The Clerk shall enter **JUDGMENT** in favor of Gazelles and close the case.

Dated this 19th day of June, 2018.

BENJAMIN H. SETTLE
United States District Judge